385 So.2d 1298 (1980)
Jerry Lee NORMAN
v.
STATE of Mississippi.
No. 51995.
Supreme Court of Mississippi.
May 21, 1980.
Rehearing Denied August 6, 1980.
*1300 Laurel G. Weir, Philadelphia, for appellant.
Bill Allain, Atty. Gen. by Frankie Walton White, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, SUGG and BOWLING, JJ.
PATTERSON, Chief Justice, for the Court:
In the Circuit Court of Newton County, Jerry Lee Norman's trial on the charge of aggravated assault on a police officer ended in a verdict of guilty and a sentence of seventeen years. Norman appeals, arguing that (1) the state adduced insufficient evidence to support the verdict, (2) the court erred in refusing to grant a mistrial because of the admission of evidence of a drug purchase, a distinct offense, (3) erred in permitting amendment of the indictment to show correctly the date on which the offense was committed, (4) erred in refusing instruction D-4 on simple assault, (5) erred in refusing to grant a continuance, (6) erred in interrogating witnesses before the jury, (7) erred in admitting a photograph of a bullet-shattered window, (8) erred in granting instruction S-1 relating to the essential elements of the offense, and (9) erred in "many other reasons apparent on the face of the record."
The state built its case about the testimony of Sammy Ray Evans and Robert Culpepper, undercover agents for the Mississippi Bureau of Narcotics. According to them, a "buy bust" was staged in Room No. 8 at the Woodland Court Motel in Newton on May 17, 1979. At about 10:55 p.m. Evans met Norman and Earl Stribling outside Room No. 8, where the three discussed the purchase of drugs. They then entered Room No. 8 where Culpepper was waiting. Either Stribling or Norman then offered a tranquilizer for sale, and Culpepper and Evans responded by announcing that they were placing Stribling and Norman under arrest. Evans testified, "I ... placed my hands upon him and stated to him I was [a] state narcotics [agent]." Culpepper at the same time pursued Stribling, who escaped and has not since been found. Norman struggled, resisting arrest, and ran away. Following Norman, Evans saw him draw a handgun from his clothing, turn around, crouch and fire. The shot shattered a window of the motel but fortunately no one was injured.
On cross-examination, Evans acknowledged that neither he nor Culpepper wore any indicia of police officers because they were dressed in civilian clothing as undercover agents. Nevertheless, Culpepper testified that both he and Evans identified themselves to Norman as police officers intending to effect an arrest. Indeed, their identification as officers appears to have induced Stribling's and Norman's flight from the scene. Moreover, Norman acknowledged that "probably" Evans, prior to the alleged assault ordered, "freeze, Bureau of Narcotics."
Norman contradicted Culpepper and Evans, although he admitted being at the scene on May 17, 1979, and implicated Stribling in the drug sale. Norman stated Stribling flagged him down and asked for a ride to a grocery store. Norman said the store was across the street from the motel and that Stribling suggested that they walk across the street to the motel to visit some relatives. According to Norman, he followed Stribling and became suspicious at the door of the motel room when one of the undercover agents asked Stribling, "Have you got the stuff?" Norman claimed he then turned around to leave when one of the officers seized him, but he broke away and fled to his mother's home where he spent the night without reporting the incident to anyone. The following morning he "flagged down" a police car to report a burglary of his house and was arrested for assault. Norman denied knowledge that "any kind of officers" were present at the motel on the night before. He testified that he possessed no firearm and shot at no one.
Norman's first assignment of error lacks merit. The evidence when viewed in *1301 the light most favorable to the state supports the jury's verdict. Culpepper and Evans established every essential element of the offense. The jury believed their testimony, rejecting Norman's, as was their right. Gathright v. State, 380 So.2d 1276 (Miss. 1980); Murphree v. State, 228 So.2d 599 (Miss. 1969).
Norman's second assignment lacks merit. While it is fundamental that the state may not introduce prior specific instances of bad conduct for the purpose of raising the "forbidden inferential sequence," Davis v. State, 377 So.2d 1076 (Miss. 1979), specific instances  here, the sale of drugs  may come in to show motive. McGee v. State, 365 So.2d 302, 303 (Miss. 1978); Carr v. State, 175 Miss. 102, 166 So. 363 (1936).
In this case, the jury would have had an unnecessarily restricted view of relevant facts if the court had not permitted witnesses to develop the "whole story" giving rise to the assault. The jury would have been left in ignorance of the purpose of the attempted arrest and the motive of the flight of the suspects.
By his third assignment, Norman attacks the sufficiency of the indictment, insofar as it erroneously indicates the date of the offense to have been June 1979 and fails to state affirmatively that Norman assaulted a known officer of the law. Norman preserved below his objection to the state's amendment of the indictment to reflect May 17, 1979, as the date of the offense; however, he failed to preserve the remainder of his objection to the indictment.
As for the matter of time, the trial court in permitting the state to amend correctly relied on Deaton v. State, 242 So.2d 452 (Miss. 1970), and Mississippi Code Annotated section 99-7-5 (1972), which states: "[A]n indictment for any offense shall not be insufficient ... for stating the time imperfectly... ." In Deaton a larceny conviction was sustained although the offense occurred on August 16 and the indictment alleged it occurred on November 14, the Court reasoning the discrepancy did not show surprise or prejudice. In the present case, the trial judge specifically found absence of surprise or prejudice.
Norman's objection to the indictment based upon the absence of a clear allegation that he knew his victim to be a police officer lacks merit, in our opinion. Norman failed to preserve this particular objection to the indictment, having nowhere mentioned it in the court below. But assuming it to be properly open to appellate review, it nonetheless fails on substantive grounds.
The indictment apprised Norman of the specific statute, Section 97-3-7(2), involved. It states facts clearly showing aggravated rather than simple assault, and indicates in unambiguous language that the victim was a police officer acting within the course of his employment. Any reading of the indictment clearly shows it is directed to the offense of a willful, aggravated assault upon a police officer. In Culberson v. State, 379 So.2d 499, 504 (Miss. 1979), we stated the language of an indictment suffices when a fair construction of it gives the accused sufficient notice of the offense with which he is charged to enable him to prepare an appropriate defense, if he has one. It is true that knowledge of the victim's status as a police officer is an essential element of the offense, Dotson v. State, 358 So.2d 1321 (Miss. 1978), but the indictment states the victim of the offense "was a law enforcement officer ... acting within the course and scope of his duty," plainly giving Norman notice of the charge.
By his fourth assignment, Norman complains of the trial court's refusal of instruction D-4 relating to simple assault. From Norman's testimony, it is obvious, however, that he was guilty either of aggravated assault or of no crime at all. The evidence does not support a "middle ground" theory. Instructions unsupported by the evidence need not, and should not, be given. Murphy v. State, 226 So.2d 755 (Miss. 1969); Cooper v. State, 218 So.2d 874 (Miss. 1969). It follows the court properly declined to instruct on simple assault.
*1302 Norman's fifth assignment of error lacks merit. By Section 99-15-29, the granting or denial of a continuance lies within the discretion of the trial judge. See also Dyer v. State, 300 So.2d 788 (Miss. 1974); Saucier v. State, 259 So.2d 484 (Miss. 1972); Ford v. State, 227 So.2d 454 (Miss. 1969).
Our study of the record suggests that the court's denial of a continuance to secure the attendance of Stribling as a witness for the defense did not constitute an abuse of discretion. On the motion, Norman testified Stribling was "hiding from the law," leaving the distinct probability that he would be unavailable indefinitely and likely for an extended period of time. Under the circumstances, a continuance would have served little purpose except to enhance the probability that the occurrence witnesses' memories of the event would grow weaker with the passage of time.
By his sixth assignment, Norman complains of the trial court's interrogation of agent Evans, suggesting that this interrogation amounted to prejudicial comment by the judge upon the evidence. At the close of the state's redirect examination of Evans, the court developed the following testimony:
BY THE COURT:
Q. Mr. Evans, the Court has a question. Why were you at this particular motel on this occasion?
A. Because on a prior day, we had arranged with the other individual, Mr. Stribling, to meet there and do the deal.
Q. Were you there in the exercise of your duties as a Mississippi Narcotics Agent?
A. Yes, sir.
Q. At the time?
A. Yes, sir.
Q. Were you doing so at the time of the shooting?

A. Yes, sir.
BY THE COURT:
That is all I have. (Emphasis supplied).
The court then permitted Norman's attorney recross examination, restricted to questions relating to those asked by the judge, excluding matters the defense had earlier neglected to develop on cross. While it is true that a trial judge's comment upon the evidence in a jury trial constitutes reversible error, Young v. Anderson, 249 Miss. 539, 163 So.2d 253 (1964), interrogation of witnesses by the judge has not been viewed as "comment" where the judge takes care not to indicate his opinion as to the value of the witness's testimony. Hannah v. State, 336 So.2d 1317, 1322 (Miss. 1976); Jones v. State, 223 Miss. 812, 79 So.2d 273 (1955); Breland v. State, 180 Miss. 830, 178 So. 817 (1938); Griffin v. State, 171 Miss. 70, 156 So. 652 (1934); Cobb v. State, 23 So. 1015 (Miss. 1898); Gunn, Witnesses, 48 Miss. L.J. 1059, 1092 (1977).
We need not decide, however, whether the trial judge impermissibly "crossed the line between judging and advocacy," see McCormick, Evidence, section 8 (1972), because Norman's failure to object to the judge's interrogation of the witness precludes appellate review. The point is argued by the appellant on appeal and has caused considerable concern whether we should raise the issue on our own motion in conjunction with the appellant's belated contention in his brief so as to insure the defendant a fair trial.
The trial judge's question, "Were you doing so at the time of the shooting?" was very likely to suggest to the jury that he had determined a shot in fact had been fired, when this was a crucial issue of disputed fact in the case. Though subtle, we think the suggestion had the likely effect of undermining to some extent the veracity of Norman's later testimony denying that he fired a shot. Doubtless reversal would have followed if Norman's counsel had objected to the judge's question which assumed as true a critical disputed fact.
We nevertheless reluctantly conclude that we should not raise the issue in view of the circumstances of the case, including the unequivocal testimony of the officers, corroborated by a photograph of a *1303 bullet-shattered window in the line of fire. We think it well to emphasize, however, that a judge must never descend the bench to indulge in partisan aspects of a trial. His duty is to afford a fair trial to all litigants without becoming an advocate to secure a conviction and must question witnesses, if at all, with scrupulous neutrality.
Norman's seventh assignment of error concerning the propriety of the admission of a photograph of a motel window shattered by his bullet lacks merit. As this Court stated in Gandy v. State, 373 So.2d 1042, 1047 (Miss. 1979), "demonstrative evidence such as this adds clarity and interest to testimony and makes more understandable the facts to which the witness testifies. If `reasonably necessary and material,' [meaning appropriate and relevant,] it may generally be admitted in the sound discretion of the trial court. Baggett v. State, 219 Miss. 583, 69 So.2d 389 (1954)." The photograph illustrates the testimony of Evans relating to the shot fired at him by Norman. Evans stated he discovered the shattered bathroom window when inspecting the line of fire. This laid a sufficient foundation for the introduction of the photograph, because it did have some evidentiary value. We therefore reject Norman's contention that the photograph should not have been admitted into evidence.
Norman's eighth assignment raises once more the issue of the sufficiency of the indictment, an issue disposed of in the discussion above, and additionally attacks the trial court's granting of instruction S-1. S-1 assertedly omits in its definition of the essential elements of the offense the necessity of Norman's knowledge that his victim was at the time of the assault an officer of the law acting within the course of his employment. However, instruction D-6, which was given, clearly cures the omission, if any. In determining whether error lies in the grant or refusal of various instructions, the instructions actually given must be read as a whole. If so read the instructions fairly announce the law of the case and create no injustice, no reversible error will be found. See Knight v. State, 57 So.2d 161 (Miss. 1952). It follows that this assignment of error lacks merit.
As for Norman's nebulous ninth assignment of error stating that "the case must be reversed for many other reasons apparent on the face of the record," Norman here fails to comply with Rule 6 of the Rules of the Mississippi Supreme Court because he does not designate with certainty the basis of error assigned. We therefore think this assignment of error is unavailing for reversal.
AFFIRMED.
SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.